[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that a marriage be dissolved. All jurisdictional requirements for its maintenance have been met.
The parties intermarried in Trumbull, Connecticut on October 5, 1985. There are two children issue of the marriage — Nicole, born January 1, 1987 and Justin, born October 10, 1988. Their marital home is at 454 Meadowside Road in Milford.
The marriage has broken down irretrievably with no hope of reconciliation. It is dissolved.
Beginning when the parties were engaged and continuing into marriage, the plaintiff drank more and more and started using CT Page 6682 cocaine which the defendant had, used and sold. They argued about the use of drugs constantly. The plaintiff testified that he used cocaine every night for four years. He wanted to break this habit but could not.
The defendant had been on the pill. She went off it, became pregnant and the parties had Nicole and then Justin.
Finally on October 10, 1989 the plaintiff entered an out patient program at the Guenster Rehabilitation Center in Bridgeport to get off his use of drugs. He left the marital home on October 30, 1989 and moved in with his mother. He stayed in the Guenster Program for the required 45 days and then started going to A.A. on a regular basis. During all this time the two children were with the plaintiff in the marital home.
On April 4, 1990 this action was started.
In late summer of 1990 the plaintiff talked to the State Wide Narcotics Task Force about the defendant selling drugs from the marital home and told where she kept the drugs. As a result of the this tip that group raided the marital home on August 3, 1990 and found cocaine in a Tupperware container in the garage. The defendant was arrested and taken away in handcuffs. The plaintiff was called and came and took the two children from the house. After being processed by the police the defendant returned to the marital home.
On September 28, 1990 the defendant signed a written agreement with the plaintiff which had been worked out by the attorneys for the parties. By this agreement the plaintiff and the defendant would have joint legal custody of the children with the plaintiff having physical custody of them. The agreement also stated that the defendant would move out of the marital home by October 3, 1990.
On November 9, 1990 the parties signed another agreement confirming that the parties would have joint legal custody, that the plaintiff would have physical custody of the children and that the defendant would move out of the family home by November 11, 1990.
The defendant did move out and the plaintiff and the children moved back into the marital home.
On January 25, 1991 Judge Curran sentenced the defendant to one year, execution suspended and 3 years probation on the charge of possession of controlled substance. The conditions of probation were drug evaluation and treatment and 500 hours of community service. CT Page 6683
Prior to the sentencing the defendant attended Guenster Rehabilitation Center in Bridgeport in the Day Treatment program from September 21, 1990 to November 15, 1990. She also had gone for drug and alcohol counseling with Jerry Weber from September 1990. After she was discharged from the Guenster program, she was referred back to Mr. Weber. She continued seeing him until June 4, 1991.
For her community service she served 76 hours in the Milford Court House and 392 hours at the Muscular Dystrophy Association in Milford.
She was reported to be in complete compliance with all conditions of her probation by the Adult Probation Office of the Judicial Department. That office in August 1991 stated that she reported in on a weekly basis and surrenders her urine for drug testing on request. Four of such tests were completely free of illicit drugs.
During her cross examination of the plaintiff, the attorney for the defendant charged the plaintiff that he had set up the defendant for the raid at the marital home made on August 3, 1990. The court noted that the plaintiff did not deny that charge.
It is a fair inference that the plaintiff did set up the defendant to be caught by the police with drugs. His motive obviously would have been to hurt the defendant before the court in the pending divorce action. After the arrest the defendant had little choice but to sign the two agreements giving physical custody of the children to the plaintiff. They have been with the plaintiff to date.
Now the plaintiff is asking this court for sole custody of the children and the defendant similarly is asking the court to have sole custody of the children.
It would appear that both parties originally were about in the same situation as far as their individual claims to have sole custody is concerned. Both were users of drugs. That was in the past and should have no role in the decision as to the custodial parent. Both are now drug free.
The children are now 5 and 4 years old. They are being taken care of by the plaintiff and his mother. The plaintiff has a job and is away from the children for long periods of time. The plaintiff's mother takes care of the children while the plaintiff is not at the marital home. That puts a heavy burden on her to keep up with the unlimited energy of a 5 and 4 year old. More important to the court is the fact that the plaintiff got the children by setting the defendant up to be arrested. The children cannot now be CT Page 6684 aware of how they came to be living with the plaintiff. Sometime they will know of the plaintiff's duplicity in getting them. That will come when they are older and can understand what went on. They should not then believe the philosophy that the end justifies the means was approved by the court. All these problems are relevant to the court's concern for the welfare of the children and their young impressionable minds.
Because of all these factors, the court finds that the children shall be with their mother. The court took into consideration in reaching this decision the fact that the children have been with the plaintiff since September 30, 1990. The change in custody naturally will cause the children some problems but they are very young and should adapt to their life with their mother in a short time.
The court has also reviewed the arguments contained in the plaintiff's brief dated June 29, 1992 and finds that most of the arguments deal with situations before the defendant became drug free after her arrest and sentencing.
The court finds that it is in the best interests of the children to be in the custody of the defendant with the plaintiff to have rights of reasonable visitation with them. Section 46b-56(b) of the General Statutes; Hall v. Hall, 186 Conn. 118, 124.
The plaintiff shall quit claim to the defendant all his right, title and interest in the marital home and she shall take such property subject to the first mortgage thereon. The plaintiff shall make all payments on the said mortgage current to the date of this Memorandum of Decision and thereafter the defendant shall be responsible to pay such mortgage and shall hold the plaintiff harmless from any liability on such mortgage.
The contents of the marital home shall belong to the defendant except for the plaintiff's clothes and personal effects.
The defendant shall keep the 1984 Datsun 3002X and the plaintiff shall release any claim he might have to it. The plaintiff shall keep the 1986 Chevrolet Celebrity and the defendant shall release any claim she might have to it.
The plaintiff shall pay the defendant the sum of $100 per week for each child as support for said children making the total weekly child support $200.
The plaintiff shall provide health insurance for the children to include Blue Cross, Blue Shield and Major Medical, Major Dental or their equivalent. All uninsured medical and dental bills for the children shall be paid 50/50 by the plaintiff and the defendant. CT Page 6685 expense of a non-emergency nature shall be incurred for such children that costs in excess of $150. unless the defendant has received consent from the plaintiff for the same, which consent shall not be unreasonably withheld.
Alimony is not awarded to either party.
The plaintiff shall pay all utilities to the date of this Memorandum of Decision on the marital home including electric, telephone, cable T.V., oil and water.
The plaintiff shall be responsible for and pay the liabilities listed on his Financial Affidavit dated March 25, 1992 and hold the defendant harmless for any and all liability on said debts. The defendant shall be responsible for and pay the liabilities listed on her Financial Affidavit dated March 23, 1992 and hold the plaintiff harmless from any and all liability on said debts.
Each party shall pay their own counsel fees and one half the counsel fee of Peter Stark, the attorney for the children, as soon as reasonably possible.
THOMAS J. O'SULLIVAN, TRIAL REFEREE